James Dusenberry died at Jersey City on February 4th, 1886, seized of property on the corner of Glenwood and Bergen *Page 118 
avenues, Jersey City (hereinafter referred to as "the homestead property"), and also some property on Bergen avenue between Montgomery street and Fairmount avenue, Jersey City (hereinafter referred to as "the Bergen avenue property"), leaving a last will and testament, dated September 10th, 1885, in and by which he gave, devised and bequeathed to his wife, Ann Dusenberry, all of his property, both real and personal, during the term of her natural life, or so long as she remained his widow, and, after her decease, he gave, devised and bequeathed the remainder to such child or children as he might leave at the time of his decease, in fee. He appointed his wife, Ann Dusenberry, executrix, with power of sale. He left him surviving his son, Benjamin Dusenberry, father of the complainant, and two daughters, Margaret Craven, wife of Harry L. Craven, and Sarah Ann Allison. Said Benjamin Dusenberry died on February 3d 1908, intestate, leaving the complainant as his only heir-at-law. On May 16th, 1910, Mrs. Dusenberry, widow, in her individual capacity, conveyed to Margaret Craven and Sarah Ann Allison the homestead property for the sum of $10,000, which consideration was paid to her, and was substantially the fair market value of the property, it being testified to and not contradicted that it was worth between ten and twelve thousand dollars. The scrivener who drew the deed erroneously named the grantor "Jane Dusenberry," whereas her true name was Ann Dusenberry, to correct which, the name of "Jane" was erased wherever it appeared in the deed, and the name "Ann" inserted in lieu thereof; and the deed, thus altered, was re-acknowledged on the 7th day of July, 1910, and re-recorded. By mistake, Ann Dusenberry executed the deed as an individual and not as executrix under the power of sale given under the will of James Dusenberry. She was eighty-two years of age at that time, and the value of her life estate was trifling. She died on September 30th, 1922, at the age of ninety-four years. After her death her two daughters contracted to convey the homestead property for $50,000. The searcher then discovered that Ann had conveyed as an individual and not as executrix, and that the title was faulty. *Page 119 
On December 28th, 1922, Mrs. Craven and Harry L. Craven, her husband, and Mrs. Allison, with Frank J. Higgins, Esq., a member of the bar, and Samuel W. Garrison, a real estate agent in Jersey City, called at the residence of the complainant and met the complainant and her mother. The purpose of their visit was fully explained. They said that Ann Dusenberry had, in 1910, conveyed to Mrs. Craven and Mrs. Allison the homestead property for the sum of $10,000, individually and not as executrix, and that they had sold the property for $50,000, and that an objection was raised to their title because Ann had not executed the deed as executrix under the power of sale, and told her that her share of the consideration paid was one-third of $10,000, or $3,333.33. She then signed the deed and was informed that when the title passed a check would be sent to her for that amount; and after the title was passed, in January, 1923, a check was received by her for that amount.
Both the complainant and her mother deny that complainant was informed that the property had been sold for $50,000; they state that they asked what the amount was, and defendants did not inform them, but said the sale "was for a large sum of money." I am satisfied, however, that a full disclosure was made by the defendants and their counsel, Judge Higgins, and that, on that day, the complainant knew that the property was being sold for $50,000. The complainant, however, admits that, in the following summer of 1923, she actually knew the amount for which the property had been sold.
The relations between the parties seem to have been quite friendly, and no date is fixed in the testimony when they became strained. However, on November 28th, 1924, almost two years after the complainant had full knowledge of the situation, she filed two bills in chancery, one for the very relief sought for by the present bill, and another for the partition of the Bergen avenue property. The defendants in the bill first above referred to were Margaret Craven and Sarah Allison. While these suits were pending Margaret Craven died, on December 31st, 1924, and Mrs. Allison died on January 16th, 1925. *Page 120 
On February 5th and February 9th, 1925, stipulations were filed to dismiss both these suits without prejudice; and, on the same dates, decrees dismissing the respective bills were entered.
After the deaths of Mrs. Craven and Mrs. Allison there was an offer made to purchase the Bergen avenue property for $105,000. Mr. Garrison, as trustee of the estate of Margaret Craven, and the complainant, were anxious to sell, but Jean K. Allison and Laura A. Griffin, the devisees of Sarah Ann Allison, were unwilling to sell unless all the suits were settled; and, the suits having been settled, they, apparently, entered into a contract in 1925, although no date was mentioned. The complainant says, in 1925, she joined in the sale of the Bergen avenue property; and at another place it is testified that the title passed in January, 1926. The testimony on this point is rather obscure; but, reading the testimony, I take it that a contract was entered into in 1925 which was performed in January, 1926.
The testimony is overwhelming that the sale of the Bergen avenue property was held up pending this settlement. The complainant discharged her lawyer, and Mr. Garrison procured the funds to pay his bill and to discharge a mortgage which Mr. Harber's client had on the share of the complainant.
In a letter written by the complainant to Jennie Allison, a grandniece of Mrs. Craven (of whom Mr. Garrison was trustee), dated February 16th, 1925, among other things, she said:
"I wish to also tell you that I have dismissed Mr. Harber on the case — I have notified him of his dismissal last Saturday. I think from your conversation here in my home that both you and your sister are rather anxious to sell the estate as soon as possible — and so as I am as anxious for a sale too — I have come to the conclusion that it is best for me to dismiss Mr. Harber — as once it goes to `court' there will be no hope for a sale.
"So, now, Jennie, there is nothing for us to stop from selling any longer — if you and your sister are as anxious for a sale as I am. I do so wish we would all come together as soon as possible and agree to sell. I — for my part — think we could invest in better paying business than what these houses are now bringing in — one really can't live off that income. Please think this matter over and let me know what you think about it? I have also wrote your sister, too." *Page 121 
And, in a letter written to Laura Griffin, a daughter of Mrs. Allison, dated February 16th, 1925, she wrote to substantially the same effect, and in another letter to Laura Griffin, written by the complainant and dated March 2d 1925, she wrote to the same effect.
On February 27th, 1925, the complainant wrote Mr. Garrison as follows: "I hereby authorize you to act as my agent to settle bill of Samuel Harber," after which is the following: "I, Margaret Dusenberry, of full age, on my oath depose and say that I have no claim against the sale of Glenwood and Bergen avenue property, that I released same when I joined in the deed," signed "Margaret Dusenberry," and sworn to before S.W. Garrison, notary public of New Jersey. I pay little attention to this affidavit, beyond the fact that it indicates that the complainant was desirous of settling her differences with the defendants in order to have the defendants join in the sale of the Bergen avenue property, which sale, as above stated, was consummated by the payment of $105,000, one-third of which, less some expenses, was paid to the complainant.
Nothing further appears to have transpired until the 16th of December, 1925, when Mr. Boardman wrote to Mr. Garrison a letter, which was in the nature of a demand, that the defendants account to the complainant for one-third of the $50,000, less the sum of $3,333.33; and, thereupon, she filed her bill on December 28th, 1925, seeking the same identical relief as that asked for in her bill filed on November 28th, 1924, and which was dismissed by consent, as above stated.
The bill charges, among other things, that the deed from Ann Dusenberry was procured by fraud, without consideration, with intent to defeat the right of the complainant in the premises, and was fraudulent, null and void, and only operated to pass a life estate. The bill also charges that it was the duty of the defendants to furnish her, in the transaction with her, not only full and truthful information as to the nature of the transaction in which she was concerned, but competent, independent legal advice in the premises. It is also charged that at the time complainant signed the deed *Page 122 
the defendants misrepresented the facts to her, and the statements made were false and untrue, and were so known to be by the defendants, and that such statements were made with the purpose of inducing the complainant to act thereon, and that, believing the statements to be true, she acted thereon; and that the conduct of Margaret Craven and Sarah Ann Allison in the premises was fraudulent; and she prays that the defendants may pay to her one-third of the net proceeds of the sale of the property conveyed to the said Isaac M. Schackter and Louis Schuchman.
As above stated, I find that the conduct of the defendants was frank, open and fair in their dealings with the complainant. True, she was not furnished with independent advice, and while I think it would have been quite proper for the defendants, before the transaction was consummated, to have seen to it that the complainant had independent advice, yet, as the conveyance was not in the nature of a gift, and, as hereinafter stated, the complainant did no more than she was morally bound to do, I do not regard the doctrine of independent advice as applicable.
I am inclined to the view that in the conferences leading to the sale of the Bergen avenue property the parties settled all their differences as to the homestead property, and that such settlement was fair.
But I am not content to let my decision rest upon the above ground alone. When the executrix made the conveyance to her two daughters she had the power and authority to sell the lands and convey a fee-simple. That she intended to convey a fee-simple the case leaves no room for doubt. Her daughters paid the fair market value of the fee, and it can hardly be assumed that their mother intended to convey, and they expected to buy, a life estate in lands where the life tenant was eighty-two years of age, and which was of trifling value. But, by a mistake in fact, they assumed that the property was the mother's, and she conveyed by full covenant warranty deed in fee-simple, which failed to pass the title intended to be conveyed. While I am inclined to the view that the deed might be reformed, yet, if the executrix were *Page 123 
living, she would have been morally bound to execute a deed which would make good the fee which she intended to convey. But she died without any of the parties having knowledge of this mistake, and it is my view that when the defendants in this case applied to the complainant for a deed which would correct the title so as to give them the fee, the complainant did nothing more than she was morally bound to do, for which the grantees paid her $3,333.33, more than the consideration paid for the deed from their parent.
I will advise a decree dismissing the bill.